# SMITH v. PHILADELPHIA, BALTIMORE & WASHINGTON RAILROAD COMPANY.

### RAILROADS; UNION STATION; NEGLIGENCE.

In an action against the Philadelphia, Baltimore, and Washington Railroad Company to recover damages for the death of the plaintiff's intestate, who, while employed by the defendant, was struck and killed in the District of Columbia by a locomotive of the Southern Railway Company coming from union station, and which was being operated on the tracks of the defendant, the trial court, with the consent of the counsel for the plaintiff and the defendant, submitted the case to the jury, subject to the opinion of the court on the question of the defendant's liability for the acts of the Southern Railway Company, and, after verdict for the plaintiff, granted a motion by the defendant for judgment on the question of law reserved. On appeal by the plaintiff from the judgment so entered, this court, construing the Acts of Congress of February 12, 1901 (31 Stat. at L. 767, chap. 353), and February 28, 1903 (32 Stat. at L. 909, chap. 856), providing for the building of a union station in the District and for the use of the defendant's tracks by the Southern Railway Company and other railroad companies entering the District, and the operating agreement between the defendant and the Southern Railway Company and other companies, of October 24, 1907, *affirmed* the judgment on the ground that the decedent was

Note.—On liability of railway company for injury to its servants by negligence of union depot employees, see note in 13 L.R.A.(N.S.) 1196.

killed upon defendant's tracks by an engine which was being oper-
ated by the Southern Railway Company in accordance with the
requirement of such acts of Congress and the provisions of such
operating agreement, and that the negligence was that of the South-
ern Railway Company, and not that of the defendant.

No. 3009.   Submitted March 8, 1917.   Decided April 2, 1917.

HEARING on an appeal by the plaintiff from a judgment of
the Supreme Court of the District of Columbia in an action
to recover for the alleged negligent killing of the plaintiff's
intestate, there having been a verdict for the plaintiff, subject
to the opinion of the court on the question of the defendant's
liability, and after verdict the court having granted a motion
by the defendant for judgment in its favor on the question of
law reserved.                                        *Affirmed.*

The COURT in the opinion stated the facts as follows:

Rosetta Smith, as administratrix of the estate of Henry E.
Smith, deceased, brought this action against the Philadelphia,
Baltimore, & Washington Railroad Company, to recover damages
for injuries resulting in the death of said Henry E. Smith.

The declaration alleged that defendant is a common carrier
engaged in interstate commerce, owning and operating a certain
elevated railroad yard, between Four-and-a-half street and Sixth
street, southwest, in the District of Columbia, with tracks or
roads thereon, together with certain locomotives, engines, cars,
etc.; that by agreement defendant allows other railroad com-
panies to use its said tracks at said point; that prior to and on
April 8, 1914, the said Henry E. Smith, the plaintiff's intes-
tate, was a servant or employee of the defendant, employed by
it in the capacity of trackwalker, inspector, and repairer of
lamps, tracks, roadway, etc., on its tracks and yard in the Dis-
trict of Columbia; that defendant did not operate its said yard,
tracks, locomotives, cars, etc., being moved over said yard and
tracks, in a careful and prudent manner, but, on the contrary,
negligently, carelessly, and recklessly operated, or allowed to

be operated by the employees of some other railroad company using its said tracks, a certain locomotive or engine, by moving the same on and over one of the tracks in the aforesaid elevated yard of the defendant, at a reckless and dangerous rate of speed, in a backward motion or manner, without keeping a proper lookout on its engine running in such a backward manner, for persons or employees on or upon said track engaged in the performance of their duties, and without giving proper or sufficient signal or warning of its approach, and by failing to keep the said locomotive or engine under proper and careful control; that the said locomotive or engine, as a result of the negligence of the defendant as aforesaid, and the negligent manner in which it was being run or operated as aforesaid, was driven and propelled against and over the plaintiff's intestate while the said plaintiff's intestate, without any negligence on his part, was engaged in the services for which he had been employed by the defendant as aforesaid; that said locomotive or engine knocked the plaintiff's intestate down, dragged him a long distance, and then passed entirely over him, fracturing his skull, and otherwise lacerating and bruising his head and body, thereby causing his death within a few hours thereafter within the District of Columbia. Said Henry E. Smith left surviving him, as his only next of kin and heir at law, his wife, the said Rosetta Smith, the plaintiff herein. And the plaintiff says that she has been damnified by the negligent killing of her intestate as aforesaid, and has been deprived of his services and large sums of money which she would reasonably and probably have received from said intestate had he continued to live. And the plaintiff claims damages to the amount of $10,000.

Defendant pleaded the general issue.

The testimony showed the concession by the defendant that plaintiff's intestate had for many years been an employee of the defendant or its predecessors in title, and that one of his duties was to look out for signal lamps; that at the time he met his death he was engaged in the performance of his duties at a place where he had a right to be and where he had worked for many years. It was further conceded that he was struck by

an engine belonging to the Southern Railway Company and died within a few hours.

Plaintiff testified that intestate was sixty-five years of age, and was earning $45, and sometimes $50 per month at his death, and that his health, eyesight, and hearing were good.

Other testimony tended to show that at a point on the elevated railroad where four tracks pass over a concrete culvert at Sixth and D streets and Virginia avenue, intestate was seen at work in the morning cleaning the switch lamps; that a Southern Railway engine coming from union station on the north track, going faster than they usually go and running backward, the tender pointed toward Alexandria and the engine toward union station, struck the intestate and he was found beside the track covered with blood; that deceased was cleaning his lamp on the first track and crossed over when a freight train came along, to the second switch. Witness knew that the engine which injured intestate was a Southern Railway Company engine, and the engineer and fireman were employees of the Southern Railway Company.

Plaintiff then offered in evidence the operating agreement between the defendant and the Washington Terminal Company, Southern Railway and others, made the 24th day of October, 1907. This agreement recites the former arrangement of the Philadelphia, Baltimore, and Washington Railroad Company and the Baltimore and Ohio Railroad Company. It recites that the said two railroads were required to construct a passenger station and terminal for the city of Washington, to be used in common by them, together with a line of railroad connecting the same with the tracks of the Philadelphia company and Baltimore company; and further reciting that pursuant to such legislation of Congress, the terminal company was duly formed with authority to construct the said passenger station terminals and connecting railroad in the said city, and the Philadelphia company and the Baltimore company are the owners in equal parts of the capital stock of the said terminal company. It recites a former agreement, dated March 28, 1889, between the Baltimore & Potomac Railroad Company, the predecessor of the

defendant, and the Richmond & Danville Railroad Company, to which the Southern Railway Company has succeeded, and another agreement of June 30, 1891, between the Baltimore & Potomac Railroad Company and the Chesapeake & Ohio Company, reciting that the said Southern Railway Company and Chesapeake company, respectively, are *inter alia* possessed of the right to transport in their own passenger trains over said Philadelphia company's railroad between the south end of the Long Bridge across the Potomac River and its said passenger station, at Sixth and B Streets, N. W., in the city of Washington, all their passenger, mail, and express traffic destined to and from points on, or that can be reached *via,* the lines of, said Southern company and Chesapeake company south of the south end of Long Bridge, and points north thereof on, or than can be reached *via,* the line owned and operated by the Philadelphia company and the Pennsylvania Railroad Company, etc.; and further reciting that whereas the defendant by adequate congressional legislation was authorized and required to reconstruct and improve parts of its railroad and appurtenances in the District of Columbia, and has constructed a new bridge over the Potomac River in lieu of the former Long Bridge, and is revising the grade and reconstructing its railroad so as to eliminate street crossings thereof at grade, improve its terminal facilities, in the city of Washington, and connect its railroad with the railroad of the said terminal company and to use the railroad and passenger terminal of the terminal company, in said city.

And whereas such revision and improvement in the railroad and terminals in the city of Washington, District of Columbia, necessitate the cancelation of the said agreements of March 28th, 1889, and of June 30th, 1891, and the termination of the arrangement under which the Washington company now uses the said station and tracks of the Philadelphia company for its trains, and the Philadelphia company, the Baltimore company, and the terminal company are prepared to grant to the Southern company, Chesapeake company, and Washington company the

trackage rights and terminal and yard facilities desired by them as hereinafter set forth.

That in consideration of the benefits and advantages secured and resulting to each of the parties by virtue of the provisions of this agreement, they do hereby, severally and not jointly, covenant and agree as follows, each party covenanting for itself, its successors and assigns:

Each of the respective companies severally grants to the Southern Railway Company, Chesapeake & Ohio Railway Company, and the Washington company, respectively (conjointly with such other railroad companies as may at any time hereafter be granted the right to use the same), the right to move in their own passenger trains, hauled by their own locomotives, over the railroad and facilities hereinafter described, all their passenger, mail, and express traffic destined between points on, or that can be reached *via,* the lines owned, controlled, or operated by each of said parties south of Long Bridge and the city of Washington, and points upon, or that can be reached *via,* the lines of the said Philadelphia company, Baltimore company, and terminal company, or lines owned, controlled, or operated by them or with which they are affiliated in interest. And the said Philadelphia company hereby grants to the Southern Railway Company and the other railroad companies named the right to move their respective passenger trains over that part of its railroad between the south end of the Long Bridge and its connection with the railroad of the terminal company next referred to; and for the purpose of computing the rental to be paid for the use thereof, as hereinafter provided, the following property divisions shall be used and the valuations thereof certified in the manner following: (1) The railroad and appurtenances and facilities of the Philadelphia company from a point of beginning at the south end of the new Long Bridge to the point of junction, at Virginia avenue and Second street, southwest, with the line extending to a connection with the railroad of the terminal company. (2) The railroad and appurtenances and facilities of the Philadelphia company from the said point of junction at Virginia avenue and Second street, S. W., to

the connection with the railroad of the terminal company at the southern portal of its tunnel at the west side of New Jersey avenue and D streets, S. E.   (3) The railroad and the passenger terminal, appurtenances, and equipment, furnishings and facilities of the terminal company from the said point of connection with the railroad of the Philadelphia company to the north side of Florida avenue, N. E.   (4) The Eckington car and engine yard, with the tracks and shops, tools, machinery, roundhouses, facilities, and appurtenances, of the Philadelphia company and Baltimore company between the north side of Florida avenue, N. E., and the south side of Montana avenue, N. E.

To further preserve and protect the rights of all companies which are hereby, or may be hereafter, granted the use of the railroad property, passenger terminal, and Eckington car and engine yard of the Philadelphia company, Baltimore company, and the terminal company, to accord equal rights and facilities in such use to all trains and cars of the same class of each of the said companies, and to provide for the physical management and efficient operation thereof; that part of the said railroad property extending from a point of junction with the main line of the Philadelphia company at Virginia avenue and Second street, S. W., to the north side of Florida avenue, N. E., and also the said passenger terminal and Eckington car and engine yard as hereinbefore designated, shall be operated and used under and subject to such rules and regulations as the board of managers, hereinafter provided for, may approve.   Such board shall consist of six managers, of whom one shall be appointed by said Philadelphia company, one by the Baltimore company, one by the terminal company, who shall, *ex officio,* be chairman of the board, one by the Southern Railway Company, one by the Chesapeake company, and one by the Washington company.   The terminal company through its superintendent or other proper officer appointed by it, shall maintain and operate the said railroad property, passenger terminal and yard, and have the control and supervision of all agencies and employees connected therewith, and shall enforce such rules and regulations for the efficient operation and use thereof as may be necessary to make

this agreement effective, to protect and preserve the rights of the terminal company, the Philadelphia company, and the Baltimore company, as well as the rights to the use of the property by said parties of the other part, and other railroad companies to whom rights may be granted by said terminal company, the Philadelphia company, and the Baltimore company, in accordance with the terms of the respective agreements which may be made, granting such right of use. For this purpose the Philadelphia company hereby appoints the terminal company its agent to operate that part of its said railroad property designated in paragraph numbered 2 of article first hereof, and the Philadelphia company and Baltimore company hereby appoint the terminal company as their agent to operate the said yard and appurtenances owned jointly by them at Eckington, and designated in paragraph numbered 4 of this agreement.

In the exercise of the rights granted by or reserved under the terms of this agreement, each of the parties agrees to run its locomotive and cars on the said railroad property, passenger terminal, and Eckington car and engine yard, designated in paragraphs numbered 2, 3, and 4, under the rules and regulations prescribed by said board of managers, and while on the railroad and property designated in paragraph numbered 1 hereof, under the rules and regulations prescribed by the Philadelphia, Baltimore, and Washington Railroad Company; and the trains and employees of each of the parties hereto while in or upon the said railroad and property shall be subject to such rules and regulations and to the orders of the superintendent, or other proper officer, of the terminal company and of the Philadelphia company, respectively. In order to secure the enforcement of such regulations and equal justice to all parties using said railroad property, passenger terminal, and Eckington car and engine yard, it is stipulated that any employee below the rank of superintendent of any of the parties to this agreement shall at any time be removed from service on, or in connection with, the property covered by this agreement, upon complaint, in writing, addressed to the general manager of the company employing the individual complained of, or, in case

of an employee of the terminal company, to the superintendent of that company, by the chief executive officer of any other one of the parties hereto or by the said superintendent of the terminal company; but such removal shall not prevent the employment elsewhere of the individual so removed.

All claims for loss and damage arising from or in connection with the administration, operation, and use of said railroad property, passenger terminal, and Eckington car and engine yard, and from the acts or omissions of all the agencies and employees connected therewith and subject to the supervision, jurisdiction, and direction of the Philadelphia company, the Baltimore company, or the terminal company, the respective owners thereof, and all suits based thereon which may be instituted against either of the parties hereto, or any other railroad company granted the use thereof, shall be cared for, dealt with, adjusted, defended, or otherwise disposed of by said terminal company, and all moneys paid or payable in adjustment or settlement thereof, and for costs and expenses incurred in connection therewith, shall be treated and considered as part of the cost and expense of operation, and included in the monthly accounts, and the same shall be ascertained in the manner, and shall be apportioned among and paid by the several companies as is hereinbefore provided with respect to other expenses of operation and maintenance: Provided, that all losses and damages resulting from the fault or negligence of employees solely in the service of, or from defective equipment of, either of the parties hereto, or of any other railroad company which may be granted the use of said railroad property, passenger terminal and Eckington car and engine yard, whether sustained by another of the parties hereto or by third persons, shall be wholly borne by that party whose employees are at fault, or negligent, or whose equipment is defective; and such party shall be wholly responsible and liable for the consequences thereof.

All claims for loss or damage arising from or in connection with the use of the property described in paragraph 1 of this agreement, and from acts or omissions of agencies and employees connected therewith, and all suits based thereon, shall be dealt

with and disposed of by the Philadelphia company in the same manner as hereinbefore provided in respect to claims and suits to be dealt with by the terminal company, and all payments made on account thereof by the Philadelphia company shall be apportioned among and paid by the companies responsible therefor, such responsibility to be determined in accordance with the method hereinbefore provided in respect to the apportionment and payment of amounts paid by the terminal company on account of like claims or suits.

At the conclusion of this testimony for the plaintiff, counsel for the defendant moved the court to take the case from the jury, and that a verdict be directed in favor of the defendant on the ground that the plaintiff had not made out a case which in law ought to be submitted to the jury. This motion was overruled and an exception noted.

After argument the court ruled as follows: "I think we had better divide this motion, and so far as the question of negligence is concerned I will overrule the motion and allow an exception. Of course, if you introduce evidence, you will have to renew it. On the other question, I am inclined to overrule that and submit the question to the jury subject to the opinion of the court on the question arising under the contract, which, I think is a very grave question, and one that ought to be very carefully considered. I think it requires a very close analysis of the contract, much closer than I have been able to give it from the reading of it here. If counsel are willing, I should like to submit—overruling this motion on the question of negligence and saving the rights of the parties thereto—the question if they find negligence, and let them return their verdict subject to the opinion of the court on the question of liability."

Both parties agreed to this suggestion of the court, and thereupon the defendant introduced evidence tending to contradict the charge of negligence, which it is unnecessary to recite.

At the close of the evidence for the defendant, there being no rebuttal, counsel for defendant renewed their motion to instruct a verdict for defendant upon the whole evidence. After

the charge to the jury, they returned a verdict for plaintiff for $500.

The defendant then moved the court for judgment notwithstanding the verdict, upon the point of law expressly reserved by the court, with the consent of counsel for the plaintiff and counsel for the defendant, before the case was submitted to the jury; namely, that there was no evidence to show that the defendant company was responsible for the acts of the employees of the Southern Railway Company who were in charge of the engine which struck and killed the plaintiff's intestate, and there was no evidence tending to show negligence upon the part of the defendant, its officers, agents, or employees.

The judgment of the court on this motion recited: "The jury having returned a verdict for the plaintiff subject to the opinion of the court upon the question of law whether the defendant is liable for the negligence of the members of the crew in charge of the locomotive in question, the plaintiff moved that the verdict be set aside, on the grounds stated in her motion, especially on the ground of inadequacy, and the defendant moved that it be set aside on the grounds set forth in its motion and also moved for a judgment for the defendant on the question of law reserved. Upon due consideration the court is of opinion that each one of said motions to set aside the verdict should be overruled, and that upon the point of law submitted to the judgment of the court it must be held that the defendant is not liable, and therefore that the defendant's motion in that behalf should be granted."

From the judgment entered in accordance with this ruling, the plaintiff has appealed.

*Mr. John C. Gittings, Mr. Robt. E. Mattingly,* and *Mr. J. M. Chamberlain* for the appellant.

*Mr. F. D. McKenney, Mr. J. Spalding Flannery,* and *Mr. G. Bowdoin Craighill* for the appellee.

Mr. Chief Justice SHEPARD delivered the opinion of the Court:

The practice pursued by the court in this case is in accord with a suggestion formerly made by this court regarding the directing of verdicts in suits of this character,* and the question presented by the appeal is the liability of the Philadelphia, Baltimore, and Washington Railroad Company for the death of one of its employees on its railroad tracks, jointly used with other railroad companies, by the negligence of employees of the Southern Railway Company in the management of an engine on said tracks. The question is not governed by those cases which have relation to leases by one railroad company to another for the operation of its tracks. The contract in this case by which the Southern Railway Company was entitled to the use of the tracks of the defendant between the Long Bridge and the union station was entered into by virtue of congressional legislation which provided for the building of the union station in Washington. Act of Congress approved February 12, 1901 (31 Stat. at L. 767, chap. 353); Act of Congress approved February 28, 1903 (32 Stat. at L. 909, chap. 856). This latter act authorized the defendant, the Baltimore & Ohio Railroad Company and the terminal company to contract each with the other or with any other railroad company or companies whose passenger traffic may be moved over the railroads of either of said two railroad companies as provided in sec. 11, in regard to the construction, maintenance, use, or operation or any line or lines of railroad, terminals, terminal tracks, stations, or other works or properties, held, owned, or possessed by any of said companies within the District of Columbia, or authorized so to be, or for the lease of the same upon such terms as may be agreed upon between the parties to any such contract.

It also provided that any railroad now or hereafter lawfully existing and authorized to extend a line of railroad into the District of Columbia, or having secured the right to operate over

* See *McNamara* v. *Washington Terminal Co.* 37 App. D. C. 384, 398. Reporter.

the lines of any other then existing railroad, to a point of connection with the tracks of said terminal company, shall have the right to the joint use of said station and terminals upon the payment of a reasonable compensation for the use of the same; and if the parties be unable to agree upon such terms, then the same shall be prescribed by the supreme court of the District of Columbia, upon petition of either party in interest, under such rules of procedure as the said court shall prescribe.

In Section 10 of the Act of 1901, which was continued in force in the Act of 1903, except in so far as it was specifically changed in that act, provides that as to square two hundred and sixty-seven and square two hundred and seventy the Southern Railway Company (a railroad corporation of the State of Virginia, whose trains now move, and are expected to continue to move, to and from Washington over the tracks of the said Baltimore & Potomac Railroad Company and Washington Southern Railway Company, under agreements existing or hereafter to be made with the last-named companies granting the necessary right therefor) and its successors shall have the same rights of acquisition by purchase or condemnation, to be exercised under the same conditions, as are in this act provided for the acquisition of additional land by the Baltimore & Potomac Railroad Company; and such squares, when so acquired, may be used by said Southern Railway Company and its successors to accommodate the handling and delivery of local freight traffic and for its other corporate purposes in the District of Columbia.

It is apparent from these acts that Congress contemplated and provided for the construction of a general union station for all railroads passing through the District of Columbia. The railroad tracks belonging to the defendant and the Baltimore & Ohio Railroad Company were required to be used by the Southern Railway Company and any other railroad companies hereafter entering the District of Columbia. This provision was not optional, and in case of the failure to agree, a tribunal was provided for determination of the amount of compensation. It is true that the contracts made under these statutes required the using companies to obey the rules and regulations of the

defendant. Some general rules and regulations had to be observed in the conduct of the trains to prevent confusion and accident; and this was contemplated by Congress, which authorized the contracts.

It is clear then that the plaintiff's intestate was an employee of the defendant; that he was killed upon defendant's tracks by an engine operated by the Southern Railway Company in accordance with the provision of the act of Congress and of the contract aforesaid. The negligence was the negligence of the Southern Railway Company, and not of the defendant, and the court was right in refusing to enter a judgment for the plaintiff on the verdict.

The judgment is *affirmed.*

As the proceeding has been authorized without costs, no costs will be taxed.